The next case today is United States v. José Espinoza-Roque. Appeal number 20-1214. Attorney Earle, please introduce yourself for the record and proceed with your argument. Thank you. Good morning. May it please the court, Jessica Earle from the Federal Public Defender's Office, on behalf of Mr. José Espinoza. May it please reserve two minutes for rebuttal. Yes. After his arrest, Mr. Espinoza's post-arrest drug test resulted negative to all substances tested. Yet nearly a year later, a probation officer determined that Mr. Espinoza, a first offender with an education, supportive family, and extensive rehabilitation, was an unlawful drug user, thus significantly increasing his guideline range at sentencing. The probation officer had only one basis for increasing Mr. Espinoza's guideline. A single, uncorroborated statement during his pre-sentence interview that he, quote, smokes one or two marijuana joints seven days a week. However, he could spend weeks at a time without smoking marijuana. This morning, we're asking the court to consider the following issue related to the prohibited person enhancement. A single, uncorroborated statement by Mr. Espinoza that he smoked marijuana seven days a week, which was rebutted by the only objective evidence in this case, a negative drug test, is not enough to apply the prohibited person enhancement under the firearms guidelines. The district court committed procedural error by finding Mr. Espinoza was an unlawful drug user. Applying this court's Capirota test, the enhanced prohibited person guideline was unjustified based solely on the statement. In order for the district court to qualify Mr. Espinoza as an unlawful drug user, he needed to use marijuana regularly over a long period of time, and his marijuana use had to be proximate or contemporaneous with the firearm possessions in May and June of 2018. Mr. Espinoza, didn't his statements indicate that the use was contemporaneous with his crime, whereas the drug test came, if I recall, a number of months at least afterwards, because the arrest was some time after the offense was committed? Your Honor, no. His statement did not say that he smoked marijuana contemporaneously. His statement is very ambiguous. His statement is that he smoked one to two joints daily, seven days a week, from age 20 until the arrest. However, he could go weeks at a time without smoking marijuana. Six months after the offense, he's arrested, and he's given a post-arrest toxology exam that they give to all arrestees, and it was negative to all substances tested. This tells us two things. It first draws into question part of his own statement that he smoked from age 20 until his arrest. That's not possible because he gave negative the day after his arrest to a drug test. Secondly, this draws into question the temporal nexus prong. Marijuana can stay in our system in some tests up to 80 days, but by a conservative estimate, let's say for about a month, we know that Mr. Espinosa was not smoking marijuana prior to his arrest. So the government makes much ado over to the fact that Mr. Espinosa's statement that he smoked seven days a week is credible, but that same credibility must be lent to the second part of his statement, that he could go weeks at a time without smoking. So we look to this weeks at a time without smoking. What does weeks mean? Does it mean two weeks? Does it mean 10 weeks? Does it mean 20 weeks? Mr. Espinosa made two unlicensed firearm sales, May and June of 2018. And when was he arrested? Your Honor, he was arrested in January of 2019, six months later. Six months later. Yes, Your Honor. So we know that there could be gaping periods of time in his life when he did not smoke, which could very well cover the dates of the offenses. And we already know, based on the objective evidence of the negative drug test, that there were gaping periods of time in his life where he did not smoke marijuana. Counsel, isn't that sufficient for the preponderance of evidence standard that applies at sentencing? His statement? Yes, in terms of both temporal, both use and temporal nexus. We disagree that that statement in any way meets Capirota's temporal prong. The court does not need to make a bright line rule in this case that statements in PSR alone are not enough to qualify a person as an unlawful drug user. There could be statements alone with no other corroborating evidence that are sufficient to determine someone as a prohibited person. But such a statement would need to unambiguously go to all three elements of Capirota. The length, the regular use, and the temporal nexus. And Mr. Espinoza's statement simply does not meet those three prongs, specifically because it's coupled with the negative drug test. Here's what confused me a bit. He testifies, he tells in his PSR interrogation, he says he used it since he was age 20 every night, one to two times a day. That's part A. Part B, he could go several weeks without using it. But as I understand it, the district court did not seize upon part B to explain the drug test. Rather, the district court disbelieved part B, said it was inconsistent with part A. In other words, the district court expressly disbelieved his testimony that he could go several weeks without using marijuana, implying, therefore, that he was always using it because of part A. And yet we know from the drug test that he'd gone quite a while without using it. So there's something illogical here in the court's reasoning, isn't there? Yes, we very much agree with that. And another issue here, Your Honor, which Your Honor addressed, is the court ignoring, and the court's reasoning is in appendix page 65, if I'm not mistaken. The court ignores the only objective evidence in this test, which is the negative drug test, and says, I choose not to believe the second part of the statement. And judges are allowed to weigh conflicting evidence, that's true. However, the findings the judge made didn't go to the temporal prong because he only adopted the test used by probation, which was a continuity test. In addition, this court has held that when there is objective evidence on the record that contradicts an implausible fact finding, that this court can make a finding of clear error, and that's in Henderson and also in Okendo. The district court ignored, took an ambiguous statement, which was confusing, and chose to credit the part he believed, thereby ignoring the objective evidence on the record. Let's assume you're right on all of that, and the district court did have some inconsistency in its finding. I think that then takes us to harmless error. And the question then is, let's assume that your client did use it regularly, once or twice a day, but could go several weeks, and did from time to time go several weeks. Is that enough to classify him as a regular user? No, your honor, because if that were the case, then Caporoto would not matter, Marceau would not matter. The court developed these tests for a specific reason. The guideline and the statute choose to punish people harshly who, in their hands, firearms become more dangerous. And in this case, we think that with that ambiguous statement, Mr. Espinoza is not fulfilling the Caporoto test, and is not the kind of person that the prohibited person enhancement seeks to punish, because he simply doesn't meet those three elements. But don't we, in most ways, we describe human beings, if they do something every day, day in and day out, for years, except occasionally they go a couple weeks without doing it. They play baseball every day, except occasionally they'll go a month without doing it. Wouldn't we say that person's a baseball player, and so on, with respect to almost all descriptions? Your honor, I would have to disagree. I think that, and particularly as to the temporal nexus prong, because, your honor, that hypothetical focuses on continuity and regularity, which are only two parts of the test. But the main issue missing here is the temporal nexus. So while someone may play baseball regularly, and they've played their whole life, if at the time they're playing baseball, or in this case, possess the firearm, there's not evidence that they were doing it at the time of the crime, then they don't meet Caporoto. Without the temporal nexus prong, this prohibited person enhancement fails. And that is the main flaw in this case. The government presented nothing at sentencing. They did not reply to the defense's objections. They presented no sentencing memorandum. They simply adopted probation's finding at the sentencing hearing and made no additional arguments that he was a prohibited person. How do you define proximate? We know he doesn't have to have been using it on the day. I take it you agree with that. Yes, your honor. And if he only used it ten years ago, I think you'd agree that's not enough. How do we draw the line between he doesn't have to use it today? What does proximate mean? Your honor, I think approximate means that, like I mentioned earlier, that we are seeking to keep firearms out of the hands of persons that are under the influence of controlled substances. So someone that is continually using that marijuana is in their system, we are seeking that a person high on marijuana does not have a firearm in their possession. So proximate, I don't think the court needs to draw a bright line, but should be relatively close to the time of the possession. If I understand the line you just gave us would essentially be the same day or day before. I would say relatively close. Marijuana is a tricky issue, your honor, because it's a drug unlike others that stays in our system longer, but the effects don't necessarily occur while possession. But besides the point, your honor, there's no evidence in this record that shows that he was using at the time of the crime other than I use seven days a week, but that's rebutted by his own negative drug test. And the fact he said, I smoked up till my arrest is also rebutted. So we can't even be sure that six months prior he was smoking marijuana. This is a statement he made to probation in a pre-sentence report interview that was summarized and then translated into the English language for the pre-sentence report. Thank you, counsel. You preserved some time. If you would mute your devices, thank you. Mr. Handle. Good morning, your honors, and may it please the court. Josh Handle from the United States. I'd like to make just two straightforward points this morning. Number one, Mr. Espinosa's admission to being a daily user of marijuana for the three years preceding his arrest was sufficient to establish by a preponderance of the evidence that he was an unlawful drug user at the time of his offense conduct. Don't we know that admission, as you just described it, was necessarily false because of the drug test? He clearly hadn't been using it in the months prior to his arrest, and yet that's inconsistent with what he said. Right. So, Judge Kayotte, I'd like to dig into that a little bit. So, Mr. Espinosa, he said a couple of things, right? His first admission was that since age 20 until arrest, he smokes one or two joints daily of marijuana seven days a week in order to get to sleep. Second, he caveats that first admission by mentioning that he could go, or he could spend weeks without smoking marijuana. And I think that there are a few ways to interpret that series of remarks, but even under the most defendant-friendly way to interpret it, which is that his normal behavior is to be a daily marijuana user, but occasionally he will spend periods of time without smoking marijuana for a couple of weeks or so. Even that interpretation, which I agree is consistent with his negative urinalysis result post-arrest, does not establish that there was clear error in determining by a preponderance of the evidence that he was an unlawful drug user at the time of his offense. But I think you skipped one thing there, which is what is causing me the puzzlement, which is the district court expressly told us she disbelieved his statement that he could go several weeks without using it. Given that finding by the district court, don't we have a flat-out conflict between his statement in the PSR and the objective evidence provided by the drug test at his arrest? So, Judge Keada, I think there are, again, I think there are a number of reasonable interpretations that we can apply to Mr. Espinoza's statements to the probation office, even in light of the negative urinalysis result. So the district court accepted his admission that he was a daily drug user, and it did not believe his self-serving qualification that he could go weeks without smoking marijuana, but had never specified whether or when he had ever taken such a break from his drug use. I think you could certainly uphold that as a reasonable interpretation of his statements, but you don't have to in order to affirm this verdict or affirm this sentencing enhancement. And I think that the fact that, again, even under the most favorable interpretation of his statements and the urinalysis result, the evidence in its totality in the PSR, we still get to the point that Mr. Espinoza is an admitted daily drug user, even if we accept the fact that he took weeks off from using marijuana, and we accept the rational inference that his arrest occurred during one of these periods when he was not using marijuana. That doesn't tell us anything about what he was doing at the time. Counsel, just before you go to that, had the judge accepted his qualification that he could go several weeks and not used her disbelief of that statement to conclude that he was a regular user, what evidence, what do we have to support the judge's finding that he was a regular user? I mean, the judge relied on, I think, tell me if the judge didn't, but the judge relied on her disbelief of his qualification that he stated. So what would be left? Well, Your Honor, what we have is Mr. Espinoza's... Let me rephrase the question. I got a little, I confused myself a little bit. So if we were left with only his testimony that he was a regular user, that he used daily, except that he went weeks without, would that support the finding here, that he was a regular user when the judge specifically said, I don't believe that you went weeks without, suggesting that that was important to the judge? Well, Your Honor, I think just taking what I think is your question here, like if we are just left with accepting the fact that he did take weeks off from using marijuana, and if the district judge had believed that part of his statement to the probation office, yes, that is absolutely enough by a preponderance of the evidence to establish... The question is, we don't have the trial judge's view on that point. We have your opinion that had she not disbelieved him, she still would have found him a regular user, but we don't know what the judge thinks about that, because the judge rejected the proposition that he could take weeks off. And for some reason thought it was important enough to mention that. Well, Your Honors, we have a transcript. We have the PSR. I mean, this defendant did not testify, right? So like this is not kind of the traditional scenario where we're talking about in-court testimony, where it's extremely important to defer to the views of the people who are hearing this testimony from the witness stand. I mean, what we have is a paragraph in the PSR that was the basis for this enhancement. I think that this court, you know, it is a truism of appellate review that you are able to affirm on any ground reflected in the record. This is certainly reflected in the record. And I would say that, again, even the most defendant-friendly interpretation of these statements... In its conclusion, in her conclusion that he was not truthful or not worthy of belief when he said he took weeks off, could the judge have found that he was not a regular user? If he had taken weeks off, could the judge have found that he was not a regular user? So a couple of points on that. The answer is no. And I think just to break that question up analytically a bit, regularity is one prong of the test that this court outlined in Capirota. I don't understand the defendants who have meaningfully controverted that either in the district court or on appeal, because obviously being a daily user of marijuana is being a regular user of unlawful drugs. I think that the issue both in the district court and again before this court is whether there was the temporal nexus, whether there was the proximity between the use and the unlawful conduct here. And I think that the district court certainly would have still found that he was an unlawful user at the time of his offense conduct, because we are talking about two months in 2018, right in the midst of the three-year period when Mr. Espinoza admits to having been a daily user of marijuana, admits that that is his default behavior during that period, and has given no reason, has never said to the probation office or the district court or this court, that his offense conduct exactly coincided with one of these periods when he was deviating from his default conduct. Isn't this an issue on which, assuming the correct legal standard was applied, we would normally give some deference to the district court's determination of whether someone was an unlawful user of a controlled substance, unless it was clearly erroneous? That's certainly true, Judge Chiara. And it's also an issue on which the prosecution has the burden of proof. So it seems to me what we have here is we know he could take off at least long enough to get a negative blood test. He said he took off several weeks at a time. That sounds a little imprecise. Whether that's the government carrying its burden of proving proximity or not sounds like the type of thing we would probably defer to the district court judge on. And yet we have no finding by the district court judge on that issue because of the mistake of rejecting the proposition that he didn't always use it. Your Honor, what we have is a factual finding that he was an unlawful drug user. I don't know that this court normally kind of gets down into the weeds in order to parse out the different, you know, kind of predicate findings that lead to that factual finding. I mean, he clearly was an unlawful drug user for this period of three years that encompassed the offense conduct. He has never contended that his offense conduct, which covered a span of two months in 2018, coincided precisely with one of these indefinite periods at which he was not using marijuana. And I think that that is, again, we are in preponderance of the evidence land. That is certainly enough to sustain the sentencing enhancement under the 51% standard that we have for sentencing findings. I'm happy to answer any questions that you have about the Ray Hayek-related argument. Obviously, our contention is that Ray Hayek did not affect the sentencing guidelines. But unless the court has further questions, I respectfully request that you affirm the judgment below. Thank you. Thank you. Yes, Your Honor, may I begin? Yes. I'd like to quickly address two main points. The government, in its argument, focused a lot on getting into the weeds and the facts. But we'd also remind the court that there is a procedural error here because the district court specifically, on record, stated that it was going to use the probation officer's analysis. And the probation officer's analysis is not CAPA ROTA. It's an incorrect finding of prohibited person. Probation only addressed continuity, not regularity, not temporal proximity. And the district court specifically stated, I'm imparting the probation officer's guidelines. The government said, we rest on what the probation officer's analysis is. So there's also a legal error here. This court doesn't even have to necessarily get into the fact-finding because we can infer from the record that the judge used the incorrect test established by the circuit. Secondly, Judge Howard asked, what are we left with? The government said, well, Mr. Espinoza never showed during sentencing that he wasn't using drugs during the time. That's not his burden. It's the government's burden to present by a preponderance of the evidence. And they did not do anything here other than deferring to probation. This was a five-minute exercise that could have been done by probation or the government in order to uphold this enhancement. Probation could have clarified his statements. They could have interviewed a family member, an employer, a friend about his drug use. There were no drugs on his person when he was arrested. There were no post-arrest statements that he was a smoker. He made no admissions to pretrial probation. There's no evidence he's ever been arrested for drugs. He's never been in drug treatment. There's no evidence at all in this young man's record other than this statement. These were simple tasks that could have been done by either probation or government to meet this preponderance standard, and they were not. And with the only evidence being this statement, which is combated by the negative drug test, it simply doesn't meet CAPA ROTA. And we ask this court to remand for resentencing with a base offense guideline of 18 rather than 20. Thank you. Thank you, Ms. Earle. That concludes argument in this case. Attorney Earle and Attorney Handel, you should disconnect from the hearing at this time.